# UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>TODD McFARLANE PRODUCTIONS, INC.,<br><br>      Debtor.<br>_____<br><br>HANOVER INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>TMP INTERNATIONAL, INC., et al.,<br><br>      Defendants.<br>_____ | Chapter 11 Proceedings<br><br>Case No. BR-04-21755-PHX-CGC<br><br>Adv. No. 06-804<br><br><br>UNDER ADVISEMENT<br>DECISION RE: LUMBERMENS<br>MUTUAL CASUALTY COMPANY'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

## I. Introduction

Lumbermens Mutual Casualty Company ("Lumbermens) seeks summary judgment against TMP International, Inc. ("International"), Todd McFarlane Productions ("Productions"), Todd McFarlane Entertainment ("Entertainment"), and Todd McFarlane ("McFarlane) (collectively referred to as "the McFarlane Defendants").[1] As the parties are well familiar with the last 10 years of litigation, it is unnecessary to recap in detail here the cases's history. It is enough to recite the following.

Lumbermens issued a policy to TMP International, Inc. for the period of May 1, 2001, through May 1, 2003. Under that policy, Todd McFarlane was not a named insured in his personal capacity, but would have been insured for acts undertaken in his capacity as an executive, director, shareholder or employee of International. The policy covered any damages resulting

---

[1] Lumbermens initially sought relief also against Tony Twist. Tony Twist has, however, settled with certain other insurance companies and is no longer involved in this litigation.

from personal injury "caused by an offense arising out of the conduct of your business" and advertising injury "caused by an offense committed in the course of your advertising activities." Personal injury was defined as any

> "bodily injury" or "advertising injury," arising solely out of one or more of the following offenses: . . . d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's good, products or services; or 3. Oral or written publication of material that violates a person's right of privacy.

Advertising injury was defined as any

> injury, other than "bodily injury" or "personal injury," arising solely out of one or more of the following offenses committed in the course of 'your advertising activities': . . . c . Oral or written publication of material that violates a person's right of privacy.

Years prior to the issuance of the Lumbermens' policies, in 1997, ex-NHL hockey player Tony Twist filed suit in Missouri against the McFarlane Defendants, and others, alleging defamation and infringement of his right of publicity as a result of the use of his name in a variety of commercial endeavors for over ten years without his consent. The first trial resulted in a jury verdict in favor of Mr. Twist for $24,500,000. The trial court subsequently vacated the verdict and entered a judgment notwithstanding the verdict ("jnov"). The jnov was overturned by the Missouri Supreme Court in 2003 and the case remanded for a new trial on Mr. Twist's right of publicity claim, the only claim remaining. In doing so, the Missouri Supreme Court issued its opinion in *Doe v. TCI Cablevision of Missouri, Inc.,* 110 S.W.3d 363 (Mo. 2003), in which it set forth the elements of the violation of a right of publicity and which will be discussed in more detail later in this decision.

The second trial in 2004 resulted in a $15 million jury verdict in favor of Mr. Twist and against the McFarlane Defendants. Approximately eight months later, on April 26, 2005, the McFarlane Defendants tendered their defense to Lumbermens Mutual Casualty Company. The McFarlane Defendants agree that because they did not tender the defense until after the trial, the duty to defend applies only to any post-tender, post-trial proceedings, which are primarily limited at this point to appellate proceedings.

## II. Issues

There are essentially two issues to be decided: 1. Whether Lumbermens has a duty to defend any post-tender, post-trial proceedings; and 2. Whether Lumbermens has a duty to indemnify the McFarlane Defendants for some or all of the judgment.

## III. Analysis

### A. Duty to Defend

An insurer's duty to legally defend claims against its insured is broader than its duty to indemnify its insured for a covered loss. *McCormack Baron Mgmt. Serv., Inc. v. Am. Guarantee & Liability Ins. Co.,* 989 S.W.2d 168, 170 (Mo. 1999) (*en banc*). A duty to defend will be found whenever a complaint filed by an injured party may potentially come within the policy's coverage. AmJur Insurance §1396. Normally, whether an insurer has a duty to defend turns on a comparison of the allegations of the complaint and the terms of the insurance policy, regardless of whether the facts alleged in the complaint are true or not. Couch on Insurance § 200:22. In this case, however, the parties agree the proper analysis requires a comparison of the 2004 trial record and the terms of the insurance policy because the McFarlane Defendants did not tender the defense until after completion of the second trial.

Under this analysis, there are three primary questions to ask: First, what events alleged by Mr. Twist at the second trial as violating his right of publicity occurred during the Lumbermens policy period; Second, do those events qualify as "use of Mr. Twist's name as a symbol of his identity" as that phrase is defined by the Missouri Supreme Court in *TCI Cablevision*; and Third, if so, is there an applicable insurance policy exclusion that denies coverage for such an event?

With respect to the first question, the parties agree that there were primarily two events alleged by Mr. Twist at trial that fell within the coverage period of the Lumbermens' policies. The first event was Mr. McFarlane's reference to Mr. Twist in Spawn Issue No. 108, which was printed in May, 2001. In that issue, Mr. McFarlane responded to a reader inquiry about the "Twistelli" character, stating

> Antonio Twistelli has recently been put in the background. We have a lot of cool

> things we want to do with that character, but if you remember not long ago in a court of law in St. Louis a man by the name of Tony Twist took it personally that his name was being used for a cartoon character, although I didn't believe any of the merits of his case.

The second event relates to various licensing agreements entered into by the McFarlane Defendants granting third parties the right to use the Spawn family of characters in their products (foreign publications, games, and software). Although the name Tony Twist did not appear in those license agreement, the Tony Twist character was included within the license agreement. The McFarlane Defendants argue that Mr. Twist's position at trial was that the failure to exclude the Tony Twist character from these agreement increased the value of these licenses. Lumbermens argues that neither of these events gave rise or could give rise to liability because neither falls within the Missouri Supreme Court's definition of "use of the name Tony Twist as symbol of his identity." This Court agrees.

In *TCI Cablevision,* the precise question before the Missouri Supreme Court was whether the trial court correctly granted jnov because Mr. Twist had failed to make a submissible case on his misappropriation of name claim. By the time the supreme court addressed the issue, the parties had agreed that Mr. Twist's real claim was more accurately a right of publicity claim, not a misappropriation claim. The court then set forth the three elements necessary to establish such a claim: "(1) That defendant used plaintiff's name as a symbol of his identity (2) without consent (3) and with the intent to obtain a commercial advantage." *Id*. at 369. In reviewing the evidence that had been presented at trial, the court concluded that Mr. Twist had in fact made a submissible case for a right of publicity claim, but the jury had not been properly instructed on two of the elements – that defendants used plaintiff's name as a symbol of his identity and that defendants intended to obtain a commercial advantage. With respect to whether defendants had used Mr. Twist's name as a symbol of his identity, the court noted that while the "verdict director omitted any requirement that the jury find that defendant used plaintiff's identity rather than merely his name," it concluded that "[t]his omission . . . did not prejudice respondents, as the evidence at trial so clearly established that appellant Tony Twist was the basis for the Spawn character's name." *Id*. at 375. However, the court did conclude that the fatal flaw at trial was that the verdict

Case 2:06-ap-00804-CGC    Doc 206    Filed 07/05/07    Entered 07/05/07 12:58:38    Desc
Main Document    Page 4 of 9

director failed to properly instruct the jury on the commercial advantage element of the claim. The case was then remanded for a new trial.

In rendering its decision, the *TCI Cablevision* court made an important distinction when discussing the trial court's failure to instruct the jury on the first element of right of publicity – use of plaintiff's name as a symbol of his identity. The court stated indicated that it is not enough to simply use plaintiff's name. The use must be of Mr. Twist's identity. This distinction was noted in *C.B.C. Distribution and Marketing, Inc. v. Major League Baseball,* 443 F. Supp. 2d 1077 (E.D. Mo. 2006), in which the court stated, "[i]ndeed, not all uses of another's name are tortious; mere use of a name as a name is not tortious. Rather, a name must be used as a *symbol of* the plaintiff's *identity* in a right of publicity action." In so concluding, the court held that the mere use by the defendant in *C.B.C. Distribution* of Major League baseball players' names in conjunction with their playing records did not establish a violation of the players' right of publicity. The use of the baseball players' names and playing records did not involve the character, personality, reputation, or physical appearance of the players: It simply involved historical facts about the baseball players such as their batting averages, home runs, doubles, triples, etc.

The same analysis holds true here with respect to Mr. McFarlane's response to the fan letter explaining why the Tony Twist character was on hold. While Mr. McFarlane's response may be relevant to whether he used or was intending to use Mr. Twist's name as a symbol of his identity when naming the Spawn character after Mr. Twist, this *actual use* in response to the fan letter during the Lumbermens' policy period was not itself actionable. The McFarlane Defendants are incorrect when they state that the Missouri Supreme Court concluded that these editorial references were actionable. That is not what the court said. The court cited to these editorial references as, one, an admission by Mr. McFarlane that he had used Mr. Twist's name as a symbol of his identity in the past and, two, evidence from which the jury could infer that the McFarlane Defendants intended to gain a commercial advantage. 110 S.W.3d at 371.

This distinction is supported by the Missouri Court of Appeals' decision in *Doe v. McFarlane*, 207 S.W.3d 52 (E.D. Mo. Ct. App. 2006). The court in *Doe v. McFarlane* held that

Case 2:06-ap-00804-CGC    Doc 206    Filed 07/05/07    Entered 07/05/07 12:58:38    Desc
Main Document    Page 5 of 9

the editorial statement made by Mr. McFarlane in Issue 108 was admissible as an "admission of a party-opponent" and was relevant to the right of publicity claim because the statement tended to prove that the McFarlane Defendants used Mr. Twist's name as a symbol of his identity and in order to gain a commercial advantage. The court did not say that the editorial comment itself *was* a use of Mr. Twist's name as a symbol of his identity. The McFarlane Defendants' focus on Mr. McFarlane's comment that he had "a lot of cool things" he wanted to do with that character is also misplaced and is relevant only with respect to the third element of the right of publicity claim – intent to obtain a commercial advantage. Without satisfying element 1, however, the claim cannot exist against Lumbermens as a matter of law solely on the language contained in Issue 108 of *Spawn*.

For a similar reason, the court rejects the McFarlane Defendants' argument that the various licensing agreement also amount to use of Mr. Twist's name as a symbol of his identity. The licensing agreements make no reference to Tony Twist. There was no use of his name and certainly no use in the licensing agreements of his name as a symbol of his identity. While the licensing agreements may provide evidence of the McFarlane Defendants' intent to obtain a commercial advantage or, more precisely, be evidence of what damages were suffered by Mr. Twist or what commercial advantage was actually obtained by the McFarlane Defendants, they do not amount to violations in and of themselves. This holding is not only consistent with the opinion in *TCI Cablevision,* it is also consistent with the jury instructions given at trial.

**B. Duty to Indemnify**

With no obligation to defend, there is no obligation to indemnify.

**IV. Conclusion**

For the foregoing reasons, the Court grants Lumbermens Mutual Casualty Company summary judgment. Counsel for Movant is to lodge a form of order consistent with this decision.

So ordered.

DATED: July 5, 2007

_____
Charles G. Case II
UNITED STATES BANKRUPTCY JUDGE

**COPY** of the foregoing mailed by the BNC and/or sent by auto-generated mail to:

Russell F. Watters
Steven H. Schwartz
John D. Briggs
Brown & James, PC
1010 Market Street, 20th Floor
St. Louis, Mo. 63101
Attorneys for Hanover Insurance Company
and Citizens Insurance Company

Robert D. Blitz
R. Thomas Avery
Christopher Bauman
Ellen W. Dunne
Blitz, Bardgett & Deutsch, LC
120 S. Central Ave., Suite 1650
St. Louis, Mo. 63105
Attorneys for Defendant Tony Twist

Michael J. O'Connor
Jennings Strouss & Salmon, PLC
201 E. Washington St., 11th Floor
Phoenix, Az. 85004-2385
Attorneys for General Star Indemnity Company

Franklin D. Dodge
Ryan Rapp & Underwood, PLC
3101 N. Central Ave., #1500
Phoenix, Az. 85012
Attorneys for Travelers Indemnity Company of America

Roger W. Hall
Buckley King
2020 N. Central Ave., Suite 1120
Phoenix, Az. 85004
Attorneys for Hanover Insurance Company and
Citizens Insurance Company

| | |
|---|---|
| 1 | James Holloran |
| | Holloran & Stewart |
| 2 | 1010 Market Street, Suite 1650 |
| | St. Louis, Mo. 63101 |
| 3 | Attorneys for Defendant Tony Twist |
| 4 | B. Gerard Cordelli |
| | The Coverage Law Firm, PLLC |
| 5 | 1629 K Street, N.W., Suite 802 |
| | Washington D.C. 20006-1637 |
| 6 | Attorneys for General Star Indemnity Company |
| 7 | Shaun McParland Baldwin |
| | Dana M. Ugolini |
| 8 | Tressler, Soderstrom, Maloney & Priess |
| | Sears Tower, 22nd Floor |
| 9 | 233 S. Wacker Drive |
| | Chicago, Il. 60606-6308 |
| 10 | Attorneys for Travelers Insurance Company |
| 11 | Kurtis B. Reeg |
| | Reeg and Nowogrocki |
| 12 | 120 S. Central Ave., Suite 750 |
| | St. Louis, Mo. 63105 |
| 13 | Attorneys for Travelers Insurance Company |
| | Clay H. Phillips |
| 14 | Alison L. Miner |
| | Bollinger, Ruberry & Garvey |
| 15 | 500 W. Madison St., Suite 2300 |
| | Chicago, Il. 60661 |
| 16 | Attorneys for Lumbermens Mutual Insurance Casualty Company |
| 17 | James J.S. Holmes |
| | Caroline Y. Bussin |
| 18 | Stacy Goldschler |
| | Sedgwick, Detert, Moran & Arnold, LLP |
| 19 | 801 S. Figueroa St., 19th Floor |
| | Los Angeles, Ca. 90017 |
| 20 | Attorneys for Employers Insurance of Wausau |
| 21 | D. Keith Henson |
| | Paule, Camazine & Blumenthal, PC |
| 22 | 165 N. Meramec Ave., 6th Floor |
| | St. Loius, Mo. 63105 |
| 23 | Attorneys for Lumbermens Mutual Casualty Company |
| 24 | Richard J. Woods |
| | The Cavanaugh Law Firm |
| 25 | 1850 N. Central Ave., suite 2400 |
| | Phoenix, Az. 85004-4527 |
| 26 | Attorneys for Employers Insurance of Wausau |
| 27 | |
| 28 | |

- 8 -
Case 2:06-ap-00804-CGC    Doc 206    Filed 07/05/07    Entered 07/05/07 12:58:38    Desc
Main Document    Page 8 of 9

| | |
|---|---|
| 1 | Michael A. Kahn |
| | Geoffrey G. Gerber |
| 2 | Jill A. Wieber |
| | Blackwell Sanders Peper Martin, LLP |
| 3 | 720 Olive, Suite 2400 |
| | St. Louis, Mo. 63101 |
| 4 | Special litigation counsel for Debtor and Debtor-in-Possession |
| | and Attorneys for TMP International, Inc., Todd McFarlane |
| 5 | Productions, Inc., Todd McFarlane Entertainment, Inc., and Todd |
| | McFarlane |